# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TRAMMEL V. JOHNSON,**

      **Petitioner,**

      v.                                 Case No. 09-C-514

**WILLIAM POLLARD,**

      **Respondent.**

## DECISION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS

**I. PROCEDURAL HISTORY**

On May 21, 2009, Trammel V. Johnson ("Johnson"), a person incarcerated pursuant to a state court judgment proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) The matter was initially assigned to the Honorable William C. Greisbach, who screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases, and ordered the respondent to answer the petition. (Docket No. 3.) Upon all parties consenting to the full jurisdiction of a magistrate judge, the matter was reassigned to this court. (Docket No. 9.) The pleadings on the petition are now closed and the matter is ready for resolution.

Following a jury trial, on December 19, 2001 Johnson was convicted in Milwaukee County Circuit Court of one count of attempted first degree intentional homicide and one count of armed robbery. (Docket No. 1 at 2.) Johnson appealed, and the court of appeals affirmed his conviction on April 8, 2003. (Docket No. 1 at 3.) Johnson did not seek the Wisconsin Supreme Court to review this decision. (Docket No. 1 at 3.) Instead, on May 28, 2003 Johnson filed a motion for post-

conviction relief in the circuit court, which was denied on October 2, 2006. (Docket No. 1 at 5.) Johnson appealed, and the court of appeals affirmed the circuit court on February 20, 2008. (See Milwaukee County Case No. 2001CF1185, Docket No. 62, available at http://wcca.wicourts.gov; see also, Wis. Ct. App. Case No. 2006AP2890, available at http://wscca.wicourts.gov.) The Wisconsin Supreme Court denied review on June 10, 2008. (Milwaukee County Case No. 2001CF1185, Docket No. 62; Wis. Ct. App. Case No. 2006AP2890.)

In his present petition, Johnson raises two related issues. First, he contends that his trial counsel was ineffective because he advised Johnson that he had a viable withdrawal defense. Relying upon counsel's advice that this defense was viable, rather than accepting a plea offer, Johnson went to trial and was convicted. Johnson next contends that his appellate counsel was ineffective for failing to properly raise this issue on appeal.

## II. STANDARDS OF REVIEW

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

The court shall presume that the state court's factual determinations are correct, and the petitioner may rebut this presumption only be clear and convincing evidence. Id. (citing § 2254(e)(1)). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." Id. (citing Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Sturgeon v. Chandler, 552 F.3d 604, 609 (7th Cir. 2009)). Under the "unreasonable application" prong of (d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme

Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

**III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD**

A petitioner seeking relief pursuant to 28 U.S.C. § 2254 due to an alleged denial of the effective assistance of counsel must demonstrate that the state court's decision on this issue was contrary to or involved an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Wright v. Van Patten, 128 S. Ct. 743 (2008) (per curiam). Under Strickland, a petitioner is entitled to relief only if he can prove the following two elements. Goodman v. Bertrand, 467 F.3d 1022, 1027 (7th Cir. 2006). First, the petitioner must prove that his counsel's performance was unreasonable. In assessing the reasonableness of counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Raygoza v. Hulick, 474 F.3d 958, 962 (7th Cir. 2007) (quoting Strickland, 466 U.S. at 689). A court assessing the reasonableness of an attorney's performance must be cautious not to view counsel with the distorted perspective offered by hindsight; rather, every effort must be made to evaluate an attorney's performance from the perspective of counsel at the time. Strickland, 466 U.S. at 689. An attorney's actions do not become unreasonable simply because they proved unsuccessful. Id.

Second, the petitioner must prove that this unreasonable conduct prejudiced his defense. It is not enough for petitioner to show that the attorney's error had "some conceivable effect on the outcome." Raygoza, 474 F.3d at 962-63 (quoting Strickland, 466 U.S. at 693). But on the opposite side, it is not necessary for the petitioner to demonstrate that the error more likely than not altered the outcome of the case. Id. Rather, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).

## IV. ANALYSIS

Although presented as two separate issues, there is actually only one issue that this court must resolve. Only if Johnson's trial counsel was ineffective could Johnson's appellate counsel's handling of this issue been unreasonable or prejudicial to Johnson.

The following facts are contained in the court of appeals' February 20, 2008 unpublished per curiam decision:

> In October 2000, Johnson and two of his associates decided to rob a fast-food restaurant in Milwaukee. As they approached the back door of the restaurant, the manager, Thomas Erwine, surprised them by opening the door. One of Johnson's accomplices, Toni Toston, tussled with Erwine. Toston then put his gun in Erwine's face and announced he was going to kill Erwine.
>
> At this point, Johnson claimed that he did not want to be a part of any murder, so he took off running. As he did so, he heard Toston fire his gun. Erwine survived the shooting. As a part of the police investigation, Johnson was interviewed by police. During the interview, Johnson admitted that he and the others intended to commit an armed robbery, but told police that he did not know that Toston was going to shoot to kill the manager. He stated that when he heard Toston's threat to kill, he took off.
>
> Johnson was charged with one count of attempted first-degree intentional homicide and one count of attempted armed robbery, both as party to a crime. Johnson filed a motion seeking to suppress his statement, which was denied. In June 2001, the prosecutor sent Johnson's counsel a plea offer—in exchange for pleading guilty, she would recommend twenty years on the homicide, consisting of fifteen years of initial confinement and five years of extended supervision, and ten years consecutive to the homicide on the armed robbery. She indicated that she would not make any recommendations as to whether these sentences should be consecutive or concurrent to the sentence to be imposed in an unrelated case.
>
> Shortly after the plea offer, Johnson was sentenced in the unrelated case. He received a sentence consisting of eighteen years of initial confinement, followed by twenty-seven years of extended supervision. In July 2001, the prosecutor in the instant case amended her plea offer—indicating that she would downgrade the homicide count to first-degree reckless homicide and recommend that the homicide and armed robbery counts be imposed concurrently, and not make any recommendation as to whether the sentence in the instant case be concurrent or consecutive to the unrelated case sentence. Johnson rejected the offer and the case was tried to a jury in October 2001.

4

> During the trial, the defense strategy was to admit the armed robbery participation, but convince the jury that Johnson should be acquitted on the homicide charge because his running away when Toston threatened to kill the victim constituted withdrawal. Johnson testified on his own behalf, repeating what he had told police—that he did not intend for the victim to be killed and ran when he heard Toston threaten to do so. The victim also testified. In response to questions, he indicated that Johnson did not run away when Toston threatened him, but was standing nearby the entire time. The trial court gave the jury the instruction on withdrawal. The jury returned a verdict finding Johnson guilty on both counts. The trial court sentenced Johnson to two concurrent sentences of twenty years each, both consisting of ten years of initial confinement, followed by ten years of extended supervision.

Wis. Ct. App. Case No. 2006AP2890 at ¶¶2-6.

Johnson does not allege that he should not have been convicted of the crimes for which he was convicted; he acknowledges his guilt. Rather, in his exceptionally well-written and thoroughly researched brief, he contends that his trial counsel was ineffective when he advised him that he had a viable withdrawal defense. Johnson contends that as a matter of law, this defense was not viable and if his trial counsel had told him this, he would have accepted a plea agreement offered by the state and would have received a lesser sentence.

> The jury was given the following instructions regarding the withdrawal defense:
>
> Finally, you must consider whether the defendant withdrew from the intended armed robbery before the crime of attempted first degree homicide was committed. The defendant contends that he withdrew from the intended robbery before that commission of that crime turned into an attempt first degree intentional homicide.
>
> A person withdraws if he voluntary changes his mind, no longer desires that the crime be committed, and notifies the others of his withdrawal far enough before the commission of the crime to allow the other parties also to withdraw.
>
> Before you may find the defendant guilty of this offense, the State must satisfy you beyond a reasonable doubt that the defendant did not withdraw.

(Ans. Ex. M at 40-41.)

Johnson contends that his trial counsel never informed him that to prevail on a withdrawal defense he would have to notify his co-actors of his withdrawal far enough before the commission of the crime to allow the other actors to withdraw. Because Johnson never contended that he did

anything other than run away when he heard his co-actor threaten to kill the victim, he alleges that as a matter of law, the withdrawal defense not viable.

The court of appeals rejected Johnson's argument, noting that if the defense had been invalid as a matter of law, the court would never have given the withdrawal instruction to the jury. Contrary to Johnson's position, withdrawal remains a viable defense even when the state is pursuing the "natural and probable consequences" route as its theory of liability. It says as much in the statute. See Wis. Stat. § 939.05(2)(c). Even when an initial crime is underway, a defendant can terminate his liability for ensuing crimes that are the "natural and probable consequences" of the original crime by withdrawing from the conspiracy. Id. Further, as the court of appeals noted, "[t]he instruction does not require 'verbal notice.' Rather, it is possible that the defense may be based on an affirmative act." Wis. Ct. App. Case No. 2006AP2890 at ¶16.

Johnson testified that after his co-actor announced that the victim was going to die, he turned from his position next to his co-actor and ran, making it four to five feet before he heard a shot fired. (Ans. Ex. M at 11-14.) If the jury were to believe Johnson's testimony, it could reasonably have concluded that Johnson had withdrawn. Although Johnson allegedly withdrew only shortly before the co-actor shot the victim, this was arguably sufficient time before the crime was committed to permit his co-actor to also withdraw. Further, turning and running could certainly be reasonably regarded as notification of withdrawal.

But Johnson's testimony that he turned and ran upon his co-actor announcing his intent to kill the victim was not the only testimony on this point in the record. "The record also contains testimony from the victim that Johnson did not run away, and that there was no affirmative action by Johnson notifying anyone that he was withdrawing from the criminal activity." Wis. Ct. App. Case No. 2006AP2890 at ¶18. Simply because the jury did not conclude that Johnson withdrew

6

does not mean that the defense was not viable as a matter of law or that his counsel was ineffective for advising Johnson that the defense was viable.

Concluding that the defense was not invalid as a matter of law does not end the analysis. Johnson also contends that his trial counsel was ineffective because he did not inform the petitioner of the notification element of the withdrawal defense. If his trial counsel had informed him of the notification element, Johnson contends he would have recognized that the jury would not accept his defense and thus would have accepted the plea agreement.

This particular point raises a factual dispute, which comes down to a question of credibility. At the post-conviction Machner hearing, see State v. Machner, 92 Wis.2d 797, 285 NW 2d 905 (1979), trial counsel testified that he advised Johnson about a notification requirement to a successful withdrawal defense. (Ans. Ex. N at 7.) Johnson, on the other hand, testified that his trial counsel never notified him of the elements of a withdrawal defense. (Ans. Ex. N. at 18-19.) The circuit court rejected Johnson's testimony and found that Johnson's trial counsel informed him of the elements of the withdrawal defense. (Ans. Ex. N at 38.) The court of appeals found that this factual finding was not clearly erroneous. Wis. Ct. App. Case No. 2006AP2890 at ¶17.

As noted above, this court must presume that the state court's factual determinations were correct. These factual findings can be upset only if the petitioner demonstrates by clear and convincing evidence that the factual finding were erroneous. Johnson has failed in his burden. The testimony of trial counsel supports the court's conclusion and thus the court cannot upset the factual finding of the circuit court.

Finally, Johnson's petition contains one sentence, repeated in his brief, that his attorney did not advise him that he could plead guilty to the armed robbery and proceed to trial on only the attempt homicide charge. (Docket No. 1 at 7; see also Docket No. 18 at 4.) Johnson's trial counsel acknowledged at the Machner hearing that he did not discuss this possibility with Johnson. (Ans.

7

Ex. N at 17.) This statement could be construed as a separate claim of ineffective assistance of trial counsel.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, in order to exhaust a claim, the petitioner must present it in a petition for discretionary review with the Wisconsin Supreme Court. Id.; see also Rodriguez v. Scillia, 193 F.3d 913, 916-18 (7th Cir. 1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted." Rodriguez, 193 F.3d at 917.

"[E]xhaustion of state remedies requires that petitioners 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)) (certain quotation marks deleted).

> Fair presentment requires a petitioner to put forward operative facts and controlling legal principles. Whether [the petitioner] has done so depends on several factors, including: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

Sweeney v. Carter, 361 F.3d 327, 332 (7th Cir. 2004) (quotation marks deleted) (citing Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001); Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992)).

Strickland requires a defendant to specifically identify the acts or omissions of counsel that were allegedly unreasonable. Strickland, 466 U.S. at 690. Having reviewed Johnson's petition for review with the Wisconsin Supreme Court, this was not identified as an issue for which review was

sought. (Ans. Ex. J.) Thus, Johnson has failed to exhaust his state court remedies with respect to this claim.

> Federal courts may only review defaulted claims if the petition shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure. See Wainwright v. Sykes, 433 U.S. 72, 91 (1977). Absent such a showing, a defaulted claim is reviewable only if refusal to consider it would result in a "fundamental miscarriage of justice," that is, where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 495-96 (1986) (internal quotations and citations omitted); see also Coleman [v. Thompson], 501 U.S. [722,] 750 [(1991)]. This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him. Schlup v. Delo, 513 U.S. 298, 329 (1995).

Rodriguez, 193 F.3d at 917.

Johnson made no showing of cause for his failure to exhaust. Therefore, in reviewing a defaulted claim, the court need only determine whether a refusal to reach the merits might work a fundamental injustice. Id. (citing Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir. 1999)).

However, exhaustion is an affirmative defense that ordinarily must be raised by the respondent or be lost. See, e.g., Trest v. Cain, 522 U.S. 87, 90 (1997). The respondent admitted that Johnson "exhausted his state court remedies as to the two federal issues he raised in his petition for writ of habeas corpus." (Docket No. 13 at 2, ¶4.) In all likelihood, since this was not clearly identified by the petitioner as a separate claim, the state's position regarding exhaustion did not include this claim. However, it is possible to argue that the respondent "has waived (or, more properly, forfeited) this argument." Canaan v. McBride, 395 F.3d 376, 382 (7th Cir. 2005) (citing Gregory-Bey v. Hanks, 332 F.3d 1036, 1043 (7th Cir. 2003) ("As a procedural default is not jurisdictional, any argument that [a habeas petitioner] has defaulted his . . . claim can be waived by the government."); Hernandez v. Cowan, 200 F.3d 995, 997 (7th Cir. 2000) (finding "waiver of waiver, now a well-established doctrine," where the State failed to object to a habeas petitioner's failure to seek state supreme court review in his direct appeal and post-conviction proceedings); cf. Momient-El v. DeTella, 118 F.3d 535, 540 (7th Cir. 1997) (refusing to find waiver of waiver by the

State where it presented its procedural default argument for the first time on appeal to the Seventh Circuit).

For the sake of completeness, the court will proceed without deciding that the respondent has waived any objection to Johnson's failure to exhaust his state court remedies with respect to this claim. Further, because the court of appeals did not address this question on its merits, the court applies the de novo standard of review applicable before AEDPA. See, e.g., Earls v. McCaughtry, 379 F.3d 489, 492 (7th Cir. 2004).

Nonetheless, the court must deny Johnson relief as to this claim because Johnson has failed to demonstrate that conduct was unreasonable or that it resulted in prejudice. Regarding prejudice, the potential argument would be that had Johnson pled guilty to the armed robbery and proceeded to trial only upon the attempted homicide charge, the court would have recognized his remorse and acceptance of responsibility and thus imposed a lesser sentence. This argument might be supported by the following statement by the trial court during sentencing:

> Mr. Johnson, I know that you are truly remorseful for what you did to yourself. I don't know how to measure whether you are remorseful to Mr. Erwine, but I give you some credit based on your statement that you have made here today. You made an attempt, although it seems somewhat half-hearted, to apologize to the police at an earlier stage. I would give you even more credit if you would have resolved this before you went to trial. I don't punish you in the least for going to trial.

(Docket No. 1 at 25.)

Even if the court were to interpret the court's statement, "I would give you even more credit if you would have resolved this before you went to trial," as meaning the court would have imposed a lesser sentence if the defendant had pled guilty in advance of trial, rather than crediting the court's immediately following seemingly contradictory statement of, "I don't punish you in the least for going to trial," the court finds no basis to conclude that pleading guilty to the armed robbery count would have resulted in a lesser sentence. The only reasonable conclusion is that the court's, "I would give you even more credit if you would have resolved this before you went to trial,"

10

statement was, at most, in reference to the attempted homicide charge and not the armed robbery charge. At every stage, including at trial, Johnson readily admitted his culpability for the armed robbery.

And in light of Johnson's decision to proceed to trial on the attempted homicide charge, it was not unreasonable to not advise Johnson of the option of pleading guilty to only the armed robbery charge. A guilty plea was not likely to have had an appreciable impact upon the scope of the trial nor would it have likely caused a court to regard it as a further acceptance of responsibility for sentencing purposes. Rather, advising a client to plead guilty to one count of the information while a defendant exercises his right to trial on an inextricably related count could be regarded as unreasonable advice. Exercising a right to trial on all counts instead of just one is unlikely to have any impact upon the defendant's sentence should he be convicted and, as the prosecutor noted at the end of the Machner hearing, even when a defendant intends to acknowledge his guilt for one count of the information, there is always the possibility of a "fumble" at trial, e.g. a witness does not show up or some other unforeseen defect occurs, (Ans. Ex. N at 31), and thus the defendant could obtain an outright acquittal of all charges.

## V. CONCLUSION

Johnson has failed to present clear and convincing evidence to rebut the presumption that the state court's factual finding that Johnson's trial counsel informed him of the elements of the withdrawal defense was correct. Nor has Johnson demonstrated that that the court of appeals' conclusion that his trial counsel's performance was reasonable was contrary to or involved an unreasonable application of the Strickland precedent. Having rejected Johnson's contention that his trial counsel was ineffective, this necessarily resolves Johnson's second claim that his appellate counsel was ineffective. Because trial counsel's performance was not deficient, Johnson cannot demonstrate that his appellate counsel's failure to allege that Johnson's trial counsel was ineffective

11

was unreasonable and prejudicial. Finally, even if the court were to consider the failure of Johnson's trial counsel to advise him that he could plead guilty to the armed robbery count while proceeding to trial on the attempted homicide count, the court would deny Johnson relief on this claim. Johnson has failed to demonstrate that counsel's failure to advise Johnson of this option was unreasonable and prejudicial. Accordingly, Johnson's petition for a writ of habeas corpus shall be denied.

Further, the court finds that the petitioner has failed to make a substantial showing of a denial of constitutional right, see 28 U.S.C. § 2253(c)(2), and thus, in accordance with Rule 11 of the Rules Governing Section 2254 Cases, the court denies the petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that Johnson's petition for a writ of habeas corpus is **denied**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of January, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge